## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTRN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Olenka Miroslavna-Stefaniyuk,** | ) | 2:18-cv-966 |
| | ) | |
| **Plaintiff** | ) | No. 2:05-mc-2025 |
| | ) | |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Slippery Rock University,** | ) | |
| | ) | |
| **Defendant** | ) | |

## <u>COMPLAINT</u>

### <u>Preliminary Statement</u>

1.  This cause of action is brought by Plaintiff, Olenka Miroslavna-Stefaniyuk, a former student at Slippery Rock University ("SRU") alleging that her dismissal from its Physician Assistant ("PA") Program was in retaliation for her advocacy on behalf of an individual with a disability in violation of Section 504 of the Rehabilitation Act the "Rehabilitation Act"), 29 U.S.C. §701, *et. seq.* and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12201, *et. seq.* Plaintiff alleges that she was dismissed from a clinical rotation in Behavioral Medicine after questioning the efficacy of a particular treatment protocol of a patient with autism and reported what she perceived to be patient mistreatment to a child abuse hotline and healthcare administration agency.

2.      Plaintiff further alleges that she has a protected interest in continuing her education at Slippery Rock University and the decision to dismiss her was unrelated to academic performance and was arbitrary and capricious and in violation of her substantive due process rights under the Fourteenth Amendment.

3.      Plaintiff also alleges that Slippery Rock University violated her procedural due process rights when it discharged her from the Physician Assistant Program for reasons other than academics without affording her the appropriate notice and opportunity to be heard required of such dismissals.

4.      Plaintiff further alleges that Defendant was unjustly enriched when it continued to take her tuition and fees payments while fully intending to deny her the opportunity to remediate and ultimately dismiss her from the program.

5.      Plaintiff requests declaratory, injunctive and equitable relief.

**Parties**

6.      Plaintiff was admitted into Slippery Rock University's Physician Assistant Program and matriculated into the six-semester program commencing May 2016.  She attended the program until May 11, 2018 and was formally dismissed from the program on May 18, 2018.

7.      Defendant, Slippery Rock University, has its principal place of business in Slippery Rock, Pennsylvania, and is a public corporation that is a member of the Pennsylvania

1

State System of Higher Education.  Slippery Rock University is a recipient of federal

financial assistance for purposes of Section 504 of the Rehabilitation Act and a public

entity for purposes of Title II of the Americans with Disabilities Act. 42 U.S.C.

§12132(1)(B).

8.      As a public University, Slippery Rock is a "person" subject to suit within the meaning of

42 U.S.C. §1983.

**Jurisdiction and Venue**

9.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, in that the

claims are asserted under the laws of the United States as well as pursuant to 28 U.S.C.

28 U.S.C. § 1343(a)(4), in that this claim is asserted under a law providing for the

protection of civil rights.   In particular, this action asserts federal questions under 29

U.S.C. §794 ("Section 504") and Title II of the ADA as well as the Fourteenth

Amendment under 42 U.S.C. §1983.

10.     The declaratory and injunctive relief sought in this matter is authorized by 28 U.S.C.

2201 and 2202 and Federal Rules of Civil Procedure 57 and 65.

**Procedural History**

11.     On January 23, 2018, Plaintiff received a letter indicating that she had been suspended from the Slippery Rock University Physician Assistant Program effective that day pending an investigation into the events at the Wellington Retreat.

12.     As per the Letter of Suspension and SRU PA Program Policies, Plaintiff submitted a written petition dated January 29, 2018 to the Program Director and Dean of the College requesting readmission.

13.     On January 30, 2018, Plaintiff's counsel submitted a letter supporting her request for readmission.

14.     On February 6, 2018, Plaintiff's counsel received a letter from SRU's attorney which disputed Plaintiff's allegations but did not set forth a final determination with regard to Plaintiff's request for readmission.

15.     On February 14, 2018, Plaintiff was informed by her attorney that she would be allowed to return to school on a "probationary" basis.

16.     Plaintiff returned to school and completed two of her required clinical rotations and two additional classes. She passed all her final examinations as well as the six-hour summative exam and her Objective Structured Clinical Examinations; both required for graduation from the PA Program.

17.     On March 29, 2018, Plaintiff was called into the office of the Program Director and informed that she had received a mid-term grade of "zero" for her Behavioral Medicine rotation.

18.     On April 11, 2018, Plaintiff submitted a written request for an incomplete for her
        Behavioral Medicine rotation.  This request was denied during a meeting with the
        instructor on April 19, 2018.

19.     On May 10, 2018, Plaintiff requested a reconsideration of the denial of the incomplete.

20.     Plaintiff's "zero" grade was converted to an "F" for purposes of a final grade.

21.     On May 16, 2018 following the release of grades, Plaintiff submitted a Final Grade
        Appeal Form to the instructor of record for the Behavioral Medicine rotation.

22.     On May 24, 2018, Plaintiff's Request for Grade Appeal was denied on the grounds that
        she had been dismissed from her clinical site and was thus unable to complete the
        required coursework.

23.     On May 25, 2018, the Program Director informed Plaintiff via letter that she was
        dismissed from the program because received a grade of "F" for the Behavioral
        Medicine Clinical Rotation.

24.     On May 30, Plaintiff continued the grade appeal process which involved a submission of
        the Final Grade Appeal Form to the department chairperson and college dean.


        **Facts**

25.     This is an action brought by Olenka Miroslavna-Stefaniuk (hereinafter "Plaintiff") who
        was a student in the Physician's Assistant Program at Slippery Rock University alleging

4

retaliation in violation of Section 504 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act.

26.  As part of the Program, students participate in clinical rotations in a variety of medical areas at sites throughout the region.

27.  Prior to her participation in the Behavioral Medicine Clerkship, Plaintiff was in good academic standing with a GPA of approximately 3.5 and positive evaluations in all seven of the prior rotations she had completed. Plaintiff was never on academic probation nor experienced any academic difficulty in the program.

28.  In January 2018 Plaintiff was assigned to do her Behavioral Medicine rotation at the Wellington Retreat, a residential treatment center for teens and adults with mental health issues in Florida.

29.  Because she was unable to find appropriate housing in the vicinity, Plaintiff and several of her classmates were given housing at the facility in rooms that were not currently occupied by patients.

30.  Plaintiff arrived at the facility on Saturday, January 13, 2018, two days before the rotation was to start. When she got to her room, she saw a male adolescent patient sleeping on the hallway floor outside her assigned room with a staff person (Behavior Technician) watching over him.

31.     Plaintiff inquired if assistance was needed to get the individual back to his room and the
        staff person said that this patient was not allowed to sleep in his bed due to exhibiting
        some challenging behaviors.

32.     The patient was still in the hallway outside his room the following day.  Plaintiff was told
        by a different Behavior Technician that the patient, who had autism, was being kept out
        of his room per doctor's orders.  The doctor in question was the head of the program at
        the Wellington Retreat.

33.     This treatment of the patient raised ethical concerns for Plaintiff and was emotionally
        upsetting due to her own past as a Ukrainian refugee fleeing religious persecution and a
        victim of family abuse.

34.     On Monday, January 15, 2018, during her individual orientation with a PA student who
        was assigned to orient Plaintiff to the facility, Plaintiff asked about the treatment of the
        adolescent patient.  She was told to speak to the Program Director.

35.     Later that day, at a mandatory lunch meeting with Center staff, other physician assistant
        and medical school students, this patient's case was mentioned several times.   Plaintiff
        inquired about how it was beneficial to have him sleep on the floor outside his room.

36.     Because this was the first day of the rotation and Plaintiff was in meetings for a majority
        of the day, she had not had the opportunity at that point to read the particular patient's
        treatment notes and treatment plan and had not yet signed confidentiality agreements
        granting access to patient records.

37.   In response to her inquiry, the Program Director requested the names of the individuals who had informed her that the treatment of this patient was per his orders.   Plaintiff informed him that she did not know the names of the individuals nor did she want to put any staff member's jobs in jeopardy.

38.   The Program Director continued to press her for this information.  In response, Plaintiff suggested that the discussion be had in private after the meeting, but this request was denied.

39.   The Program Director grew irate and indicated that he was beginning to think that the placement might not be the appropriate fit for her.  He indicated that by not giving up the names she was exhibiting a resistance to learning and was putting other patients at risk. However, he did not take any action during or immediately following the meeting regarding that statement.

40.   The handout provided to new Physicians Assistants for this rotation specifically states that students should "speak up in community and treatment team.  Your opinion is valued here."

41.   The SRU PA Program Policy Manual specifically provides that: "Students are responsible for identifying and reporting unprofessional, unethical, and/or illegal behavior by healthcare professionals and students, faculty, and staff of the MSPAS program. If a physician assistant student has a reasonable belief that such conduct has occurred, he or she should report it to the Program Director, preceptor, supervisor, or faculty advisor, as may be appropriate under the circumstances."

42.     Following the meeting, Plaintiff emailed the Slippery Rock Physician's Assistant Program Interim Program Director, Clinical Coordinator, and other staff at Slippery Rock University requesting transfer to a different rotation site due to her ethical concerns about the treatment of this patient with a disability.

43.     Plaintiff also contacted the Florida Department of Children and Families Abuse Hotline and made a report regarding her concerns about the treatment of the young male patient with autism.   In addition, she filed a complaint with the Florida Agency for Healthcare Administration.

44.     Feeling uncomfortable about remaining in the premises with the young patient still housed in the hallway, significant ethical concerns, and due to the Program Director's statements about her unfitness for the program, Plaintiff flew home to Pittsburgh to await placement in another clinical rotation.

45.     On her way to the airport, she spoke to the Program Head and the Clinical Coordinator and was told that she would likely not graduate.  This was prior to any investigation of the incident or any conversation with the Program Director of the Wellington Retreat program.

46.     Plaintiff was told to follow up with the Department Chair to set up a meeting to discuss the incident and continued participation in the Physician's Assistant Program.

47.     The following day, and as per the request of the Physician Assistant Program Director, Plaintiff submitted a formal description of the incident that led to her leaving the rotation.

8

She also reiterated her request for a different clinical rotation and indicated that she had located a clinical site willing to accept her for that purpose.

48.     In a letter dated January 16, 2018 and at the request of SRU PA Program, the Program Director of the Wellington Retreat Center described the incident with Plaintiff.   In his letter, the Program Director did not indicate that he dismissed Plaintiff from the site, but merely stated that he and the staff did not believe that they would be able to provide her with a meaningful experience as she was not open to learning.

49.     On January 18, 2017, Plaintiff received an email requesting her presence at a meeting with the faculty to "review with her why she was dismissed from the site in Florida." The email further indicated that the meeting was "an academic exercise" and that she would not be permitted to have a support person present, as she had requested.

50.     However, when Plaintiff appeared for the meeting, which was scheduled for January 23, 2017, she was immediately given a letter stating that she was suspended from the SRU Physician's Assistant Program.  Plaintiff inquired as to whether the suspension would affect her grade if she was reinstated and if withdrawal was a possibility, if her grade were to be adversely impacted.  She was informed that all this would be determined pending the outcome of the investigation.

51.     Following issuance of the suspension letter, Plaintiff's SRU Identification Card was deactivated and she was no longer able to access SRU's buildings or computer system and was therefore unable to submit any further assignments.

52.     The stated reason for the suspension was the recent dismissal from Wellington Retreat which was allegedly due to Plaintiff's failure to listen to "the explanations and context in the given situation and refusal to learn from the attending physician," "both of which place[d] the patient's health at risk."

53.     The patient in question was not assigned to Plaintiff nor under her direct care while she was at the facility.

54.     The Slippery Rock PA Program Policy Manual provides that a student has one month after notification of suspension to submit a written petition to program director and academic dean to request readmission.

55.     Plaintiff submitted a petition for readmission on January 29, 2018.  In her petition, she reiterated her ethical concerns about the treatment of the teenage patient as well as other practices at the facility.  She noted that she could not fairly be said to have demonstrated an unwillingness to learn as the events in question occurred only four hours into the first day of her clinical rotation.

56.     Shortly thereafter, Plaintiff retained counsel who submitted a letter in support of her request for readmission on January 30, 2018.  Plaintiff's counsel at the time indicated that Plaintiff was not only exercising her First Amendment rights in expressing her concerns about the treatment of the patient but was also following protocol as a mandated reporter when she made her report to the abuse hotline and the Healthcare Administration.

10

57.     Following submission of the letter, Plaintiff's counsel engaged in discussions with SRU's attorney.   SRU's attorney informed Plaintiff's counsel that Plaintiff would be allowed back on a probationary status pending investigation of the incident in Florida.

58.     Based on her conversations with her counsel and SRU faculty via email, Plaintiff was under the impression that she would be receiving an incomplete for the Behavioral Medicine Clerkship and would have to complete such a rotation after graduation.

59.     However, neither the agreement between Plaintiff's attorney and SRU Counsel nor the conditions of Plaintiff's probationary status were provided in writing.  The terms and conditions regarding re-admission, completion of Plaintiff's studies, and ability to graduate were not set forth in any documentation.  This is in violation of SRU and the PA Program's own rules and policies regarding suspended students.

60.     There is no provision for a "probationary status" in the PA Program Policy Manual which simply provides that following a suspension, students must request readmission.  If readmission is granted for a suspended student, the student will "decelerate one year and be required to meet readmission criteria as set forth in a contract designed by the program's admission committee to specifically give student best possibility of success."

61.     The PA Program admission committee did not devise a contract with Plaintiff to determine how she might meet readmission criteria.

62.     However, as instructed by her counsel and based on conversations he had with SRU's legal department, Plaintiff contacted the Clinical Coordinator and Department Chair

about completing assignments for the Behavioral Medicine Clerkship and the location of her next rotation as she had two further rotations to complete in order to graduate.

63.     She was informed that she should not complete any assignments for the Behavioral Medicine clerkship and should not attend school for the end-of-the-rotation examination because she remained on suspension.  However, she was allowed to start her ninth clinical rotation the following week.

64.     She completed the rotation on March 21, 2018.

65.     Because she was allowed to proceed with her additional required clinical rotations and courses, Plaintiff was given the impression that the matter regarding the dismissal from Wellington was essentially resolved, and that she would have to make up her clinical rotation in Behavioral Medicine at some point in the future.  Plaintiff relied on this representation and continued to pay tuition and fees to continue in the program.

66.     Plaintiff mailed the Program Director on February 26, 2018 inquiring about whether she would be permitted to walk at graduation with the understanding that she would be making up the Behavioral Medicine clerkship sometime thereafter.

67.     On February 27, 2018, she received an email from the Program Director indicating that she *would* be allowed to walk during graduation.

68.     This further bolstered Plaintiff's impression that she would be given some form of an incomplete for the prior Behavioral Medicine clerkship and that she would be permitted to remediate.

69.     She began her tenth clinical rotation on March 26, 2018.  Had patient safety been the true concern of the PA Program or any related concerns for unprofessional conduct, Plaintiff would not have been allowed to participate in the two remaining rotations required for graduation from her program.

70.     Plaintiff continued to pay tuition and fees throughout this period of time and ultimately received grades and credit for the two rotations and two courses she completed in Spring 2018 which are reflected on her formal transcript.

71.     However, on March 29, 2018, Plaintiff met with the Clinical Coordinator, Program Director, and instructor of record for the Behavioral Medicine Clerkship and was told that she would receive a grade of "zero" for the Behavioral Medicine Clerkship because she had not submitted any assignments for the rotation. This "zero" was not based on academic performance nor does it represent an exercise professional judgment on the part of the faculty.

72.     Plaintiff was further told that she would not be permitted to make up the Behavioral Health rotation at the completion of her other courses and rotations and would likely be dismissed from the program.  Plaintiff was provided no documentation regarding this determination.

73.     The SRU PA Program Policy Manual provides that if a student earns a grade below C in a clinical rotation, they must petition the Program Director and complete the additional rotation at the end of the scheduled program, delaying their graduation.

74.     Plaintiff contacted the Dean who informed her that grade determinations were up to the discretion of the instructor of record.  She therefore requested an incomplete from the instructor of record of the Behavioral Medicine clerkship.  The SRU PA Program Policy manual contains no policies regarding incompletes.

75.     The instructor of record denied the request for an incomplete with no further explanation.

76.     Plaintiff was then informed that she had to wait until final grades were posted for the term to initiate the formal grade appeal process by which students grieve complaints of alleged academic injustices relating to a final grade and/or professional responsibilities.

77.     After her grade appeal was denied at the initial level, Plaintiff competed the additional steps of appealing her grade which were all denied.  On May 18, 2018 Plaintiff was formally dismissed from the PA Program given her grade of an "F" in the Behavioral Medicine Clerkship.

78.     Plaintiff alleges that the "F" grade was not based on academic performance but occurred because she was precluded from submitting assignments following her dismissal from the Behavioral Medicine Clerkship after expressing her concern over the treatment of a patient at the facility.    As such, the grade and the resultant dismissal are more akin to a action for misconduct and Plaintiff should have been afforded the full range of procedural due process protections that accompany such actions.

79.     During the Spring semester and prior to her dismissal from the PA Program, Plaintiff was offered a full-time job in New York City as a Physician's Assistant at a salary of

14

$100,000 a year.  Because of her dismissal, Plaintiff has had to forego that professional opportunity.

80.     Because she was unable to take that professional opportunity and has been unable to gain employment in any other area, Plaintiff's school loans have become due and she is unable to pay her loans or pay for room and board.  As such, she has become homeless and has been living on friends' couches or in her car.

79.     The actions of Defendants in arbitrarily and capriciously dismissing Plaintiff from the PA Program have resulted in severe economic losses and economic opportunity.

80.     Plaintiff is experiencing irreparable harm and is threatened with continued irreparable harm in that her dismissal from the PA Program deprives her of her legal right to attend classes in pursuit of a master's degree in the PA Program and a career as a Physician Assistant.

81.     Plaintiff has no adequate remedy at law for said irreparable harm in that Plaintiff's damages cannot be totally determined or accurately sustained.  Moreover, Plaintiff's harm cannot be adequately compensated with monetary damages.

82.     Plaintiff is entitled to a seeks permanent injunctive relief.  Plaintiff has a meritorious cause of action and is likely to prevail on the merits.

83.     To preserve the status quo until this matter can be fairly heard on the merits, Plaintiff will seek a preliminary inunction against SRU's dismissal of Plaintiff by filing the appropriate motion.

Count I Violation of Section 504 of the Rehabilitation Act of 1973

81.     Plaintiff hereby incorporates the allegations of the foregoing paragraphs into Count I.

82.     Section 504 regulations incorporate by reference the procedural provisions contained in

        34 C.F.R. §1007(e) of the federal regulations implementing Title VI of the Civil Rights

        Act of 1964.  See 34 C.F.R. §104.61.  These provisions prohibit recipients of federal

        funds from intimidating, threatening, coercing, or discriminating against any individual

        for the purposes of interfering with any right or privilege secured by Section 504, or

        because he has made a complaint, testified, assisted, or participated in any manner in an

        investigation, proceeding, or hearing.  34 C.F.R. 100.7(e)

75.     As described above, Plaintiff engaged in protected activity when she posed questions

        regarding the treatment of a disabled individual at Wellington Retreat and ultimately

        reported her concerns to Florida's Children and Families Abuse Hotline and the Agency

        for Healthcare Administration.

76.     Defendant engaged in retaliatory action when it initially suspended Plaintiff from the

        Physician's Assistant Program and ultimately dismissed her without allowing her to

        remediate her grade by completing the rotation upon completion of her program.

77.     Defendant's action in dismissing Plaintiff from the program was sufficient to deter a

        person of ordinary firmness from exercising his or her rights.

78.     Plaintiff was suspended from the PA Program as a direct result of her expressing

        concerns about the treatment of the patient at the facility and her report to the Florida

        Agency for Healthcare Administration.  There was a direct causal connection between her

        protected activity and the adverse action of dismissal from the PA Program.  This causal

        connection is established by statements from the Wellington Program Director regarding

        Plaintiff's advocacy on behalf of the disabled patient and her alleged unwillingness to

        learn as well as the temporal proximity between her advocacy and suspension from the

        program.


Count II, Violation of Title II of the ADA

79.     Plaintiff hereby incorporates the allegations of the foregoing paragraphs into Count II.

80.     The ADA prohibits discrimination against any individual "because such individual has

        opposed any act or practice made unlawful by this chapter or because such an individual

        made a charge, testified, assisted, or participated in any manner in an investigation,

        proceeding, or hearing under this chapter.  42 U.S.C. § 12203 and 28 C.F.R. 35.134.

81.     As described above, Plaintiff engaged in protected activity when she posed questions

        regarding the treatment of a disabled individual at Wellington Retreat and ultimately

        reported her concerns to Florida's Agency for Healthcare Administration.

17

82.     Defendant engaged in retaliatory action when it initially suspended Plaintiff from the
        Physician's Assistant Program and ultimately dismissed her without allowing her to
        remediate her grade by completing the rotation upon completion of her program.

83.     Defendant's action in dismissing Plaintiff from the program was sufficient to deter a
        person of ordinary firmness from exercising his or her rights.

84.     Plaintiff was suspended from the PA Program as a direct result of her expressing
        concerns about the treatment of the patient at the facility and her report to the Florida
        Agency for Healthcare Administration. There was a direct causal connection between her
        protected activity and the adverse action of dismissal from the PA Program.  This causal
        connection is established by statements from the Wellington Program Director regarding
        Plaintiff's advocacy on behalf of the disabled patient and her alleged unwillingness to
        learn as well as the temporal proximity between her advocacy and suspension and
        dismissal from the program.


Count III, Violation of Plaintiff's Procedural Due Process Rights under the Fourteenth Amendment

85.     Plaintiff hereby incorporates the allegations of the foregoing paragraphs into Count III.

86.     Because Plaintiff's dismissal was not based solely on academic grounds, she must be
        afforded notice and the opportunity to be heard.  Plaintiff was never permitted to submit
        her assignments for the rotation nor complete the rotation final examination nor any
        opportunity to make-up the clinical portion of the Behavioral Medicine rotation.  Her

dismissal thus cannot fairly be said to be on academic grounds since no academic or clinical work had been completed.

87.     On January 18, 2017, Plaintiff was called into a meeting to discuss the incident at Wellington Retreat but was immediately handed a Letter of Suspension with no opportunity to be heard.

88.     Once Plaintiff was granted probationary status, she was given no instruction as to the impact of that status on her ability to progress through the program. This failure to provide details of the impact of that status again denied her notice and an opportunity to be effectively heard.

89.     Plaintiff was never provided a copy of the outcome of the investigation into the incident at Wellington Retreat. As such, she did not have all the information regarding her alleged deficiencies which precluded her from preparing a defense to the charges. As such, she was denied notice and a full opportunity to be heard.

Count IV, Violation of Plaintiff's Substantive Due Process Rights Under the Fourteenth Amendment

90.     Plaintiff hereby incorporates the allegations of the foregoing paragraphs into Count IV.

91.     Plaintiff has a property interest protected by the Due Process Clause in continuing her graduate education at a public institution.

92.     Due Process requires that Plaintiff's education in the Physician's Assistant Program at
        Slippery Rock University, a public institution, not be terminated for arbitrary and
        capricious reasons.

93.     Plaintiff received a grade of "F" in her Behavioral Medicine Clerkship not because of
        poor academic performance, but because she was precluded from submitting any
        assignments or completing the end of rotation examination due to her suspension from
        the clerkship and the pending investigation of the events surrounding the suspension.

94.     Plaintiff was deprived of the opportunity to remediate the grade by retaking the Clerkship
        or by submitting the missed assignments and examination at a later date.

95.     The decision to dismiss Plaintiff and not provide her with an opportunity to remediate her
        grade was motivated by bad faith and was in retaliation for her advocacy on behalf of an
        individual with a disability and not related to her academic performance.

96.     The decision to decision to suspend Plaintiff, allow her back on a provisionary or
        probationary basis, and ultimately dismissal was not made in accordance with SRU or the
        PA Program's own policies and procedures.

97.     In the same year that Plaintiff was dismissed, three other students in the PA Program
        were provided the opportunity to remediate part or all of a rotation in order to bring up
        their course grades.  (I would add this into the Facts section too)

98.     All of Plaintiff's prior rotation evaluations were positive and she received no formal

        evaluation for the Behavioral Medicine Rotation because she was only present at the site

        for four hours.

        WHEREFORE, Plaintiff prays this Court for an ORDER:

1.      Assuming jurisdiction of this case;

2.      Reversing the decision of the Lynn Williams, M.D., dismissing Plaintiff from the

        Program.

3.      Declaring that Slippery Rock University's actions amounted to retaliation in violation

        of Section 504 of the Rehabilitation Act of 1973 and Title II of the Americans with

        Disabilities Act;

4.      Declaring that Slippery Rock University failed to accord Plaintiff both procedural and

        substantive due process in violation of the Fourteenth Amendment.

5.      Directing Slippery Rock University to provide permanent injunctive relief and by

        ordering the University to place Plaintiff in the position she would have been had

        SRU offered an incomplete or opportunity remediate and thereby allow her to

        continue in the Physician Assistant Program and make up the Behavioral Medicine

        rotation.

6.      Directing Slippery Rock University to provide reimbursement of attorney fees;

7.      Directing the Slippery Rock University to provide compensatory damages; and

8.    Granting such other and further relief as may be appropriate.

Respectfully Submitted,

*/s/ Jennifer Modell*
Jennifer Modell
Attorney I.D. PA 208050
429 Forbes Avenue, Suite 450
Pittsburgh, Pennsylvania 15219
Telephone: (412) 281-4959
Fax: (412) 291-1389
Email: jennifermodell@ruderlaw.com

Date: July 23, 2018

22

## VERIFICATION

I, Olenka Miroslavna-Stefaniuk, hereby verify that the facts set forth in this foregoing Verified Complaint are true and correct to the best of my knowledge, information and belief.

I understand that the statements in this Verification are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

## CERTIFICATE OF SERVICE

I, Jennifer Modell, Esquire, do hereby certify that a true and correct copy of the foregoing

VERIFIED COMPLAINT is being served upon the following counsel of record via notice of

electronic filing through Court's Case Management/Electronic Case File System and United

States Postal Service this 23rd day of July, 2018

Michael S. Ferguson
Pennsylvania's State System
Of Higher Education
2986 N. Second Street
Harrisburg, PA 17110-1201

**Ruder Law**

By:   */s/ Jennifer Modell*
Jennifer Modell, Esquire