IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

OLENKA MIROSLAVNA-STEFANIYUK, )
)
Plaintiff, ) Civil Action No. 18-966
) Magistrate Judge Maureen P. Kelly
v. )
) Re: ECF No. 17
SLIPPERY ROCK UNIVERSITY, LYNN )
WILLIAMS, JERRY CHMIELEWSKI, )
BARBARA RAGNELLI, and MEGAN )
BORGER,

Defendants.

## OPINION

This is a civil action filed by Plaintiff Olenka Miroslavna-Stefaniyuk ("Plaintiff") against Defendants Slippery Rock University ("Slippery Rock"), and Lynn Williams ("Williams"), Jerry Chmielewski ("Chmielewski"), Barbara Ragnelli ("Ragnelli") and Megan Borger ("Borger")(collectively, "Defendants"). Presently before the Court is a Motion to Dismiss filed by Defendants. ECF No. 17. For the reasons set forth herein, the Motion to Dismiss will be denied.

### I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed the operative Amended Complaint on October 26, 2018. ECF No. 15. Therein, she makes the following allegations. Plaintiff matriculated into Slippery Rock's six-semester Physician Assistant Program (the "Program") in May 2016. Id. ¶ 6. Williams is the Program Director of the Program. Id. ¶ 9. Chmielewski is the Dean of the College of Health, Environment and Science at Slippery Rock. Id. ¶ 10. Borger is the Clinical Coordinator of the Program. Id. ¶ 11. Ragnelli is an Assistant Professor of the Program. Id. ¶ 12.

In January 2018, Plaintiff was assigned to do a Behavioral Medicine clinical rotation at the Wellington Retreat ("Wellington"), a residential treatment center in Florida for teens and adults with mental health issues. Id. ¶ 33. She was staying at Wellington during her rotation. Id. ¶ 34. When Plaintiff arrived to her room at Wellington on January 13, 2018, two days prior to the start of the rotation, she observed an adolescent male patient sleeping on the hallway floor outside of her room with a Behavior Technician watching over him. Id. ¶ 35. Upon Plaintiff's inquiry, the Behavior Technician told Plaintiff that the patient, who was autistic, was not allowed to sleep in his bed because he had exhibited some challenging behaviors. Id. ¶ 36. The following day, the patient was still in the hallway. Id. ¶ 37. Another Behavior Technician told Plaintiff that the patient was being kept out his of room per the order of the doctor who was the Program Director at Wellington. Id. Plaintiff felt that the patient was being denied appropriate treatment due to his disability. Id. ¶ 38.

On January 15, 2018, Plaintiff inquired about the treatment of the patient to other students and to Wellington staff. Id. ¶¶ 39-40. In response to her inquiry, the Program Director asked Plaintiff for the names of the individuals who had told her that the treatment of the patient was per his orders. Id. ¶ 42. Plaintiff told him she did not know the names nor did she want to jeopardize any staff member's job. Id. ¶ 43. The Program Director continued to press her for the information, grew irate and indicated that Plaintiff was exhibiting a resistance to learning and was putting other patients at risk. Id. ¶ 44. He also indicated that he was beginning to think that the placement might not be an appropriate fit for Plaintiff. Id.

Plaintiff subsequently emailed the Program's Interim Program Director,[1] Clinical Coordinator,[2] and other Slippery Rock staff, and requested a transfer to a different rotational site

---

[1] Plaintiff does not identify the Interim Program Director by name.
[2] Plaintiff does not identify the Clinical Coordinator by name.

2

due to her concerns about the treatment of the male patient. Id. ¶ 47. Plaintiff also contacted the Florida Department of Children and Families Abuse Hotline and made a report about her concerns. Id. ¶ 48. Plaintiff filed a complaint with the Florida Agency for Healthcare Administration. Id. Plaintiff also called the PA Accreditation Body regarding Slippery Rock's accreditation status given the existence of discriminatory treatment at one of its Behavioral Medicine Rotation sites. Id.

Plaintiff left Wellington and returned home to Pittsburgh to await placement in another clinical rotation. Id. ¶ 49. En route, Plaintiff spoke to the Program Head[3] and the Clinical Coordinator and was told that she would likely not graduate. Id. ¶ 50. Plaintiff was told to follow up with the Department Chair[4] to set up a meeting to discuss the incident at Wellington and Plaintiff's continued participation in the Program. Id. ¶ 51. Plaintiff submitted a formal description of the incident at Wellington and reiterated her request for a different clinical rotation. Id. ¶ 52. In her request, Plaintiff indicated that she had located a clinical site willing to accept her. Id.

In a letter dated January 16, 2018, and at the request of the Program, the Wellington Program Director described the incident with Plaintiff and stated that he and the staff did not believe they would be able to provide her with a meaningful experience because she was not open to learning. Id. ¶ 53. On January 18, 2018, Plaintiff received an email requesting her presence at a meeting with the faculty to "review with her why she was dismissed from the site in Florida." Id. ¶ 54. The email indicated that the meeting was "an academic exercise" and that she would not be able to have a support person present. Id. ¶ 55.

---

[3] Plaintiff does not identify the Program Head by name.
[4] Plaintiff does not identify Department Chair by name.

3

On January 19, 2018, Plaintiff contacted the United States Department of Education Information Resource Center and the United States Department of Education Office of Civil Rights to find out how to file a complaint against Slippery Rock and its agent, Wellington. Id. ¶ 55. Plaintiff also contacted the Provost's Office at Slippery Rock's Office of Student Affairs. Id.

When Plaintiff arrived for the January 23, 2018,[5] meeting, she was given a letter from the Program stating that she was suspended from the Program due to her dismissal from Wellington. Id. ¶¶ 16, 56, 58. Upon her suspension, Plaintiff's Slippery Rock Identification Card was deactivated and she was no longer permitted to access Slippery Rock buildings or its computer system. Id. ¶ 57. Plaintiff was therefore unable to submit any further assignments. Id. Plaintiff made inquiries as to whether the suspension would affect her grade if she was reinstated and whether her grade would be adversely impacted if withdrawal was a possibility. Id. ¶ 56. She was informed that the answers would be determined "pending the outcome of the investigation." Id.

Plaintiff submitted a petition for readmission on January 29, 2018, to the Program Director and Dean of the College. Id. ¶¶ 17, 61. Plaintiff subsequently retained counsel who submitted a letter in support of the petition for readmission on January 30, 2018. Id. ¶ 62. Following discussion with Plaintiff's counsel, Slippery Rock's counsel informed Plaintiff's counsel that Plaintiff would be allowed back on a probationary status pending investigation of the incident at Wellington. Id. ¶ 63. This agreement was not reduced to writing and no additional conditions were provided to Plaintiff. Id. ¶ 65. Plaintiff contacted the Clinical Coordinator and Department Chair about completing assignments for the Behavioral Medicine Clerkship and the location of her next rotation. Id. ¶ 68. She was informed that she should not

---

[5] In the Complaint, this date is mistakenly identified as January 23, 2017. ECF No. 15 ¶ 56.

4

complete any assignments for the Behavioral Medicine Clerkship and that she should not attend school for the end-of-the-rotation examination because she remained on suspension. Id. ¶ 69. She was permitted to start another clinical rotation (her ninth) the following week. Id. Because she was proceeding with her clinical rotation, Plaintiff believed the Wellington incident had been resolved and she continued to pay tuition and fees for the Program. Id. ¶ 71.

On February 26, 2018, Plaintiff emailed the Program Director and inquired as to whether she would be permitted to walk at graduation with the understanding that she would be making up the Behavioral Medicine Clerkship thereafter. Id. ¶ 72. On February 27, 2018, the Program Director emailed Plaintiff and indicated that she would be permitted to walk at graduation. Id. ¶ 73.

Plaintiff completed her ninth clinical rotation on March 21, 2018, and began her tenth clinical rotation on March 26, 2018. Id. ¶¶ 70, 75. She received credit for these rotations and for two courses she completed in Spring 2018. Id. ¶ 76.

On March 29, 2018, Plaintiff met with the Clinical Coordinator, the Program Director and the instructor of record for the Behavioral Medicine Clerkship[6] and was told that she would receive a grade of "zero" for the Behavioral Medicine Clerkship because she had not submitted any assignments for the rotation. Id. ¶ 77. Plaintiff was further told that she would not be permitted to make up the Behavioral Medicine rotation and would likely be dismissed from the Program. Id. ¶ 78. Plaintiff was not provided with any documentation about this determination or about the outcome of the investigation into the incident at Wellington. Id.

Plaintiff subsequently contacted the Dean who informed her that grade determinations were up to the discretion of the instructor of record. Id. ¶ 80. On April 11, 2018, Plaintiff submitted a written request for an incomplete from the instructor of record; on April 19, 2018,

---

[6] Plaintiff does not identify this instructor by name.

5

the instructor denied this request without explanation. Id. ¶¶ 23, 80-81. On May 10, 2018, Plaintiff requested reconsideration of the denial. Id. ¶ 24. On May 16, 2018, following the release of grades, Plaintiff submitted a Final Grade Appeal Form to the instructor of record for the Behavioral Medicine rotation. Id. ¶ 26. Plaintiff's request for Grade Appeal was denied on May 24, 2018, on the grounds that she did not complete her coursework. Id. ¶¶ 27, 83. On May 18, 2018, Plaintiff was formally dismissed from the Program based on her "F" grade in the Behavioral Medicine Clerkship. Id. ¶ 83. On May 30, 2018, Plaintiff continued her grade appeal by submitting a Final Grade Appeal Form to the department chairperson and the college dean. Id. ¶ 29.

During the Spring 2018 semester, before her dismissal from the Program, Plaintiff was offered a full-time job in New York City as a physician's assistant. Id. ¶ 85. The salary for that job was $100,000 a year. Id. Due to her dismissal from the Program, Plaintiff could not take that job. Id. Plaintiff is experiencing economic hardship as she has been unable to obtain employment and her school loans have become due. Id. ¶ 86.

In the Amended Complaint, Plaintiff raises two claims: Count I (against Slippery Rock) - a violation of Section 504 of the Rehabilitation Act of 1973, id. at 16-17, 19; and Count II (against all Defendants) - a violation of Plaintiff's procedural due process rights under the Fourteenth Amendment brought through 42 U.S.C. § 1983. Id. at 18-19.

On November 13, 2018, Defendants filed the instant Motion to Dismiss and Brief in Support. ECF Nos. 17-18. On December 5, 2018, Plaintiff filed a Brief in Response to the Motion to Dismiss. ECF No. 20. The Motion to Dismiss is now ripe for review.

## II. STANDARD OF REVIEW

As the United States Supreme Court explained in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), a complaint may properly be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570. In assessing the merits of a claim subject to a motion to dismiss, a court must accept all alleged facts as true and draw all inferences gleaned therefrom in the light most favorable to the non-moving party. Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) (citing Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir. 2003)). A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) (quoting Graff v. Subbiah Cardiology Associates, Ltd., 2008 WL 2312671 (W.D. Pa. June 4, 2008)).

## III. DISCUSSION

### A. Count I: Section 504 of the Rehabilitation Act

At Count I, Plaintiff asserts a claim that Slippery Rock took retaliatory action against her in violation of Section 504 of the Rehabilitation Act. ECF No. 15 at 16-17. Such a claim requires plaintiffs to show: "(1) that they engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). Section 504, *inter alia*, prohibits discrimination by any program or activity receiving federal financial assistance against individuals with disabilities on the basis of such disabilities. 29 U.S.C. § 794(a).

7

### 1. Protected Activity

In support of their Motion to Dismiss as to Count I, Defendants first argue that Plaintiff failed to allege that she was engaged in a protected activity. ECF No. 18 at 4-11. Plaintiff alleges that she engaged in protected activity "when she posed questions regarding the discriminatory treatment of a disabled individual at Wellington Retreat and ultimately reported her concerns to Florida's Children and Families Abuse Hotline, the Agency for Healthcare Administration and the U.S. Department of Education Civil Rights Hotline." ECF No. 15 ¶ 94. Defendants argue that Plaintiff's stated concerns about the patient in question related to the adequacy of his treatment, not that he was being denied care or refused accommodation on the basis of his disability. ECF No. 18 at 11. The agencies cited by Plaintiff, Defendants continue, monitor care and treatment issues, not discrimination, access or accommodation issues. Id.

While the substance of Plaintiff's cited questions and reports is not perfectly clear, at this early stage of the case, viewing the allegations of fact as true as drawing all inferences therefrom in the light most favorable to Plaintiff, the allegations are sufficient to plausibly establish that she engaged in a protected activity.

### 2. Slippery Rock's Knowledge of Plaintiff's Protected Activity

In further support of the Motion to Dismiss as to Count I, Defendants also argue that Plaintiff has not alleged that Slippery Rock knew of Plaintiff's protected activity. ECF No. 18 at 11-12. In response, Plaintiff, *inter alia*, points to allegations in the Amended Complaint concerning her communications with agents of Slippery Rock. ECF No. 20 at 13. Again, while the substance of Plaintiff's communications with Slippery Rock is not clear, at this early stage of the case, viewing the allegations of fact as true as drawing all inferences therefrom in the light

8

most favorable to Plaintiff, the allegations are sufficient to plausibly establish that Slippery Rock had knowledge of Plaintiff's protected activity.

### B. Count II: Procedural Due Process under the Fourteenth Amendment

At Count II, Plaintiff asserts a claim that she was not afforded procedural due process prior to her dismissal from the Program. ECF No. 15 at 18-19. Procedural due process requires notice and an opportunity to be heard. Kadakia v. Rutgers, 633 F. App'x 83, 88 (3d Cir. 2015).

#### 1. Individual Defendants' Roles in Constitutional Deprivation

In support of the Motion to Dismiss as to Count II, Defendants first argue that Plaintiff has not provided particularized allegations regarding the role that each individual Defendant played in the claimed constitutional deprivation. ECF No. 18 at 13. This argument is belied by a review of the detailed factual allegations in the Amended Complaint describing Plaintiff's interactions with the individual Defendants, the results of these interactions, and Plaintiff's attempts to appeal the decisions of the individual Defendants.

#### 2. Academic Dismissal

In further support of the Motion to Dismiss as to Count II, Defendants finally argue that Plaintiff has failed to allege any procedural due process violation because her dismissal from the Program was academic in nature and required only an "informal-give-and-take" with Slippery Rock administrators. Id. at 13-14. In response to this argument, Plaintiff asserts that her dismissal from the Program was for disciplinary rather than academic reasons. ECF No. 20 at 14-18.

In support of their argument, Defendants principally rely on Mauriello v. University of Medicine & Dentistry, 781 F.2d 46 (3d Cir. 1986). In Mauriello, the United States Court of Appeals for the Third Circuit explained that the United States Supreme Court "has made a clear

9

distinction between disciplinary and academic dismissals. In the latter circumstance, courts are ill-equipped to review the largely subjective academic appraisals of the faculty. ... A formal hearing is not necessary; rather an informal-give-and-take between the student and the administrative body dismissing her is adequate." 781 F.2d at 50 (citation and quotation marks omitted). The Court of Appeals further explained:

> We have no difficulty in deciding that the plaintiff's dismissal here was based on academic not disciplinary grounds. As the district judge stated, "it was not a case of her being compelled by rule, order, or law of the school to do something and not having done it getting discharged. . . . This is not a case of somebody being disruptive in her misconduct . . . .." The focus of the University's inquiry was on the quality of the plaintiff's research and her dedication to academic pursuits, not misconduct.

Id.

Keeping this analysis in mind and viewing the allegations of fact as true as drawing all inferences therefrom in the light most favorable to Plaintiff, the allegations are sufficient to plausibly establish that Plaintiff was dismissed from the Program for non-academic reasons.

## IV. CONCLUSION

For the reasons set forth herein, Defendants' Motion to Dismiss, ECF No. 17, will be denied. An appropriate order follows.

# **ORDER**

AND NOW, this 16th day of January, 2019, IT IS HEREBY ORDERED that the Defendants' Motion to Dismiss, ECF No. 17, is DENIED.

Pursuant to Rule 4 of the Federal Rules of Appellate Procedure, if Plaintiff wishes to appeal from this Order he must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.

BY THE COURT:

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE